RTG for AUSA Griffith

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

MAR 29 2018

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of  )
*(Briefly describe the property to be searched or identify the person by name and address)*  )
)   Case No.  '18MJ8524
One Alcatel Cellular Telephone  )
FCC ID: 2ACCJB06, Barcode #014783000120803  )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated herein)

located in the   Southern   District of   California, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated herein)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841, 846, 952, 960, 963 | Importation of a Controlled Substance, Possession of a Controlled Substance with Intent to Distribute, Conspiracy to Import and Conspiracy to Possess a Controlled Substance with Intent to Distribute |

The application is based on these facts:
See Affidavit (incorporated herein)

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Special Agent Mohammed Rahman, HSI
Printed name and title

Sworn to before me and signed in my presence.

Date: 3/29/2018 @ 1:30 pm

_____
Judge's signature

City and state: El Centro, CA     Hon. Peter C. Lewis U.S. Magistrate Judge
Printed name and title

# ATTACHMENT A

## PROPERTY/ITEMS TO BE SEARCHED

The property/items to be searched is described as:

One Alcatel Cellular Telephone
FCC ID: 2ACCJB061
Barcode #014783000120803
**(Target Telephone)**

Currently in the possession of Seized Property Vault, Homeland Security Investigations El Centro, 2051 N. Waterman Ave, El Centro, CA 92243, in the Southern District of California.

## ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data, including but not limited to, emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, telephone numbers, contact information, web browsing history, documents, data stored within applications, and location data:

a. tending to indicate efforts to deliver controlled substances from Mexico to the United States;
b. tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence tending to indicate efforts to deliver controlled substances from Mexico to the United States;
c. tending to identify co-conspirators, criminal associates, or others involved in smuggling controlled substances from Mexico to the United States;
d. tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as stash houses, load houses, or delivery points;
e. tending to identify the user of, or persons with control over or access to, the subject phone; or
f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above;

**which are evidence of violations of Title 21, United States Code, Sections 841, 846, 952, 960 and 963.**

The date range for this search is for the period of July 13, 2017, up to and including February 8, 2018.

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Mohammed Rahman, Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), having been duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic device, as further described in Attachment A, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 841, 846, 952, 960 and 963, as more particularly described in Attachment B:

> One (1) Alcatel Cellular Phone
> FCC ID: 2ACCJB061
> Barcode #014783000120803
> **(Target Telephone)**

This search supports an investigation and prosecution of Jesus Ramon NIEBLAS-Pina (NIEBLAS) for one or more of the crimes mentioned above. A factual explanation supporting probable cause follows

2. The **Target Telephone** was seized from NIEBLAS by Customs and Border Protection Officers on February 8, 2018, when he was arrested attempting to smuggle cocaine into the United States through the Calexico East, California, Port of Entry (POE), in the Southern District of California. The **Target Telephone** was then turned over to HSI. As described below, during NIEBLAS's post-arrest statement, NIEBLAS acknowledged that the **Target Telephone** belonged to him. The **Target Telephone** is currently in the possession of HSI, located at 2051 N. Waterman Avenue, El Centro, California 92243 in the Southern District of California, and has been in HSI's continuous possession since February 8, 2018.

1

1    3.     As set forth in more detail below, there is probable cause to believe that a search of the **Target Telephone** will produce evidence of the aforementioned crimes, as described in Attachment B.

4.     The information contained in this affidavit is based upon (1) my experience and training, (2) my personal observations and knowledge, (3) my review various official reports prepared by other law enforcement officers, and (4) consultation with other federal, state, and local law enforcement agents. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that others or I have learned during the course of this investigation.

## EXPERIENCE AND TRAINING

4.     I am a Special Agent with HSI and have been so employed since April 2017. I have conducted criminal investigations of or relating to narcotics smuggling and other crimes. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia. I have received specific training in the area of narcotics investigations, and I have training and experience in the methods used by narcotics traffickers to import and distribute drugs. I am presently assigned to a Contraband Smuggling Group in El Centro, California, and my duties include investigating the illicit trafficking of controlled substances into the United States of America. I am cross-designated by the United States Drug Enforcement Administration to conduct narcotics investigations and enforce the provisions of the Federal Controlled Substance Act, pursuant to Title 21, United States Code.

5.     Through training and experience, I have become familiar with narcotics trafficking techniques and the means used by narcotics traffickers to store and retrieve information pertinent to their criminal activities. Based on my training and experience, as well as my consultations with other law enforcement personnel, I know that drug traffickers commonly use electronic devices such as cellular

telephones, personal digital assistants (PDA), and computers to store names, telephone numbers, records, drug ledgers, and other information pertaining to drug trafficking activity.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities.

7. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

3

    d.    Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    e.    Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

    f.    Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

    g.    Drug smugglers therefore generate many types of evidence that is stored on the cellular telephones, including, but not limited to, emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data..

9.    Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

    a.    tending to indicate efforts to import methamphetamine, or some other federally controlled substances from Mexico into the United States;

4

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

    e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10.    According to United States Customs and Border Protection Officers' (CBPO) reports, on February 8, 2018 at approximately 7:30 a.m., NIEBLAS applied for entry into the United States through the cargo lanes at the Calexico East POE driving a tractor-trailer hauling bales of hay.

11.    While assigned to primary lanes, CBPO Carrillo referred the vehicle to the x-ray machine for further inspection due to a computer-generated referral. Working as the primary operator of the x-ray machine, CBPO Moreno scanned the vehicle and noticed anomalies in the vehicle's engine area.

12.    During secondary inspection, CBPO Noriega received a negative oral Customs Declaration from NIEBLAS. A Canine Enforcement Officer screened the

5

vehicle with his Human/Narcotics Detection Dog (HNDD). The HNDD alerted to the engine area of the vehicle.

13. Further inspection of the vehicle revealed a non-factory compartment in the engine area. The non-factory compartment was probed, producing a white powdery substance, which field-tested positive for cocaine. The cocaine was left in the compartment and NIEBLAS was allowed to continue into the United States.

14. HSI agents notified, and agents followed NIEBLAS from the Calexico East POE to an intersection in Calexico, California where NIEBLAS parked the tractor-trailer on the street. HSI agents then observed NIEBLAS exit the tractor-trailer and enter a taxi, which drove NIEBLAS back to the Calexico East POE. (The tractor-trailer was in continuous sight of law enforcement agents while in the United States.) NIEBLAS exited the taxi and attempted to walk back into Mexico. At that time, NIEBLAS was arrested for importation of cocaine, in violation of 21 U.S.C. §§ 952 and 960.

15. The **Target Telephone** was found on NIEBLAS's person during a pat down and was seized incident to his arrest. After being provided his *Miranda* warnings, NIEBLAS agreed to waive his rights and speak to the SAs. NIEBLAS acknowledged that he owned the **Target Telephone** with the phone number 686-287-0897.

16. NIEBLAS stated he was recruited by a co-conspirator to deliver narcotics to the Los Angeles, California area. NIEBLAS stated that he was to be paid $1,500 to smuggle narcotics into the United States on this occasion. NIEBLAS stated that he was going to travel to Bakersfield, CA to deliver the hay. NIEBLAS said that another co-conspirator was supposed to call him with instructions on where to deliver the tractor-trailer in the Los Angeles, CA area. However, NIEBLAS was concerned about the length of time he spent at the POE and decided to leave the keys to the tractor-trailer and head back to Mexico.

17. NIEBLAS stated he previously delivered narcotics to the Los Angeles, CA area for the same co-conspirator on January 31, 2018. NIEBLAS said after entering the United States, the co-conspirator called him and instructed him to meet with an unknown male in a parking lot. NIEBLAS said he stayed in the tractor while the unknown male removed the narcotics from the engine area. NIEBLAS said the co-conspirator paid him $1,500 when he returned to Mexico.

18. Based upon my experience and investigation in this case, I believe there is probable cause to believe that the **Target Telephone** contains evidence of violations of 21 U.S.C. §§ 841, 846, 952, 960, and 963. Specifically, I believe that NIEBLAS and other persons yet unknown were involved in an ongoing conspiracy to import cocaine or some other prohibited drugs. Probable cause also exists to believe that NIEBLAS used the **Target Telephone** to coordinate with co-conspirators regarding the importation and delivery of the cocaine on the day of his arrest and on at least one earlier occasion, and to further this conspiracy both inside and outside the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of cellular telephones, which identify other persons involved in narcotics trafficking activities.

19. Finally, I also know that narcotics trafficking activities entail intricate planning to successfully evade detection by law enforcement. In my professional experience, this requires planning and coordination in the weeks and often months prior to the event. This planning often includes coordination on crossing the border to develop a crossing history or pattern. NIEBLAS admitted to smuggling cocaine into the United States on both January 31, 2018 and February 8, 2018. A review of NIEBLAS's crossing records shows frequent crossings in the vehicle he used to

conceal the cocaine, dating back to at least September 13, 2017. Given this, I respectfully request permission to search the **Target Device** for items listed in Attachment B beginning on July 13, 2017, up to and including February 8, 2018.

## METHODOLOGY

20. It is not possible to determine, merely by knowing the **Target Telephone's** make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in flight mode, which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, I will collect the **Target Telephone** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## CONCLUSION

23. As NIEBLAS drove the vehicle in which the cocaine was recovered, admitted that he imported drugs at least once prior, admitted to purposely and knowingly crossing the border to import drugs, and was the driver and sole occupant of the vehicle, probable cause exists showing that NIEBLAS had knowledge of the controlled substances in the vehicle. In addition, as NIEBLAS had a substantial quantity of cocaine, approximately 19.36 kilograms (42.68 pounds), probable cause exists to believe that NIEBLAS was coordinating with persons known and unknown to import cocaine or some other controlled substance. Probable cause therefore exists to conclude that NIEBLAS used the **Target Telephone** to facilitate violations of 21 U.S.C. §§ 841, 846, 952, 960 and 963.

24. Because the **Target Telephone** was seized during the investigation of NIEBLAS's smuggling activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by NIEBLAS continues to exist on the **Target Telephone**. As stated above, I believe that the appropriate

9

date range for this search is from July 13, 2017, up to and including February 8, 2018.

25. Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with HSI, or another federal law enforcement agent or officer specially trained in digital evidence recovery, to search the **Target Telephone** described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

Mohammed Rahman, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 29th day of March 2018.

HONORABLE PETER C. LEWIS
United States Magistrate Judge